**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CARLOS A. ORDONEZ-LOPEZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-25-CV-470-KC** |
| | § | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY et al.,** | § | |
| | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

On this day, the Court considered Carlos A. Ordonez-Lopez's Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1. For the following reasons, the petition is **GRANTED IN PART**.

## I. BACKGROUND

This case involves Ordonez-Lopez's challenge to Respondents' decision to detain him without a bond hearing after living in the country for eighteen years and being released on his own recognizance for at least the last two years. The following facts are derived from the allegations in the Petition, Response, and attached documents.

### A. Arrival in the United States & Immigration Proceedings

Ordonez-Lopez is a Guatemalan citizen who has resided in the United States since October of 2007. Pet. ¶¶ 18, 46; Pet. Ex. 3 ("2025 Form I-213"), ECF No. 1-1. Ordonez-Lopez "was first encountered by [Department of Homeland Security ("DHS")] during a traffic stop" in 2020. Resp. 2, ECF No. 4. It is unclear whether removal proceedings were then commenced, and if so, what became of them. *See id.*; Resp. Ex. A ("2020 Form I-213"), ECF No. 4-1. On October 8, 2021, Ordonez-Lopez applied for asylum, withholding of removal and protection

under the Convention Against Torture ("CAT"). Pet. ¶ 47; Resp. 2. On November 20, 2023, Ordonez-Lopez received a Notice to Appear before an Immigration Judge ("IJ") and was paroled or otherwise permitted to remain at liberty while his asylum application remains pending. Pet. ¶¶ 48, 59; *see* Resp. 2. Ordonez-Lopez has a valid employment authorization permit, and was working as a painter in Stuart, Florida during this time. Resp. ¶ 60. As part of his routine check-ins with Immigration and Customs Enforcement ("ICE"), Ordonez-Lopez reported to the ICE field office in Stuart, Florida on August 19, 2025. *Id.* ¶ 49. There, ICE detained him "pursuant to a DHS arrest warrant" because his "[o]rder of [r]ecognizance was revoked." *Id.*; 2025 Form I-213, at 3. Ordonez-Lopez was initially detained at the "Alligator Alcatraz" detention facility in Miami, Florida, and subsequently transferred to the El Paso Camp East Montana facility in El Paso, Texas. Pet. ¶ 50. Ordonez-Lopez requested a bond hearing before an IJ, and he received one on September 5. *Id.* ¶¶ 51–52.

The IJ found that Ordonez-Lopez was not a flight risk or a danger to the community and granted him a bond for $2,000. *Id.* ¶ 52. ICE filed a notice of intent to appeal and a motion to reconsider based on the Board of Immigration Appeals ("BIA") decision in *Matter of Yajure Hurtado*. *Id.* ¶¶ 53–54. Based on the motion to reconsider, the IJ issued two amended orders denying Ordonez-Lopez bond for lack of jurisdiction. *Id.* ¶ 55. Currently, Ordonez-Lopez is scheduled for a master calendar hearing before an immigration judge on December 9, 2025. Resp. 3.

**B. Procedural History**

On October 15, 2025, Ordonez-Lopez filed a Petition for a Writ of Habeas Corpus, asking the Court to order his release or a bond hearing before an immigration judge. Pet. 15.

Ordonez-Lopez challenges the legality of his detention on constitutional and statutory grounds. *Id.* ¶¶ 61–71.

Respondents filed a Response, in which they do not dispute any material facts. Therefore, it is unnecessary to hold a hearing. *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II. DISCUSSION

In his Petition, Ordonez-Lopez claims that (1) he is not subject to mandatory detention under 8 U.S.C. § 1225(b) and associated regulations, and (2) his continued detention violates his right to procedural due process under the Fifth Amendment. Pet. ¶¶ 61–71.

Respondents make three main arguments in opposition: (1) the Court lacks subject matter jurisdiction; and (2) Ordonez-Lopez is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(1); and (3) he fails to show this statute is unconstitutional as applied to him. Resp. 1.

This Court recently decided four other petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b). *See Erazo Rojas v. Noem*, No. 3:25-cv-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30, 2025); *Martinez v. Noem*, No. 3:25-cv-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). Respondents rely on many of the same arguments that this Court has already

addressed and rejected. Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A. Jurisdiction

Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1252(g) and 1252(b)(9). Resp. 1–2, 10. They appear to bolster their jurisdictional argument through an appeal to § 1225(b)(4). *Id.* at 10.

The Court already rejected essentially the same arguments. *See Erazo Rojas*, 2025 WL 3038262, at *2 (rejecting all three arguments); *Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (rejecting § 1252(g) arguments). And other courts have agreed with those analyses. *See, e.g.*, *Vieira v. Anda-Ybarra*, --- F. Supp. 3d ----, 2025 WL 2937880, at *5 (W.D. Tex. Oct. 16, 2025). In their briefing, Respondents fail to distinguish those prior jurisdictional analyses. Resp. 10–11.

Therefore, the Court finds that it has jurisdiction to consider Ordonez-Lopez's challenge to his detention.

### B. Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Ordonez-Lopez falls within it. Pet. ¶¶ 25–45; Resp. 3–9. In recent months, courts across the country have held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the

Government's new interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

Nevertheless, the Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Ordonez-Lopez is entitled to due process and succeeds in his as-applied challenge.

**C. Procedural Due Process**

Respondents argue that Ordonez-Lopez "has not raised any colorable claim that mandatory detention under § 1225(b) is unconstitutional as applied to him." Resp. 2. They argue that, even as a matter of due process, Ordonez-Lopez "is not entitled to more process than what Congress provided him by statute." *Id.* at 12. This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). *See id.* at 11–12. The Court has already rejected such a reading. *See Santiago*, 2025 WL 2792588, at *7–10; *Lopez-Arevelo*, 2025 WL 2691828, at *7–10. And other courts have agreed with this analysis. *See, e.g.*, *Vieira*, 2025 WL 2937880, at *5.

Respondents also appear to argue that Ordonez-Lopez is receiving sufficient due process because he is in full removal proceedings, where "constitutional protections are built in[]." Resp. 12. However, the process Ordonez-Lopez has received in relation to his removal is entirely distinct from the process he has received in relation to his detention, and whether that process is sufficient under the Fifth Amendment.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem* ("*Martinez II*"), No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action";

(2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

**1. Private Interest**

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez II*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents' position appears to be that Ordonez-Lopez does not acquire a liberty interest until his detention becomes unreasonably prolonged. Resp. 13. This Court has previously held that that once released from immigration custody, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Lopez-Arevelo*, 2025 WL 2691828 at *10–11 (quoting *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025)); *accord M.S.L.*, 2025 WL 2430267, at *8 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.") (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)). And this Court has also held that noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status. *Martinez*, 2025 WL 2965859, at *4.

Here, Ordonez-Lopez has lived in the country for about eighteen years, and for the last two years he has been allowed to legally work and remain in the country. Pet. ¶¶ 46, 60. Until recently, he was working with employment authorization as a painter in Stuart, Florida. *Id.* ¶ 60. After his 2020 traffic stop, Ordonez-Lopez was released from custody on an order of supervision, and there is no indication that he violated any term or condition of his release before being rearrested. Indeed, an immigration judge even made a second determination after he was re-detained that he should be again released on bond. *See id.* ¶ 52. For these reasons, Ordonez-Lopez possesses a strong interest in his continued freedom from detention.

**2. Risk of Erroneous Deprivation**

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez II*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)).

Respondents argue that the process afforded to Ordonez-Lopez in his removal proceedings is sufficient due process. Resp. 12. As discussed above, insofar as those procedures relate to Ordonez-Lopez's removal and not his detention, they do not ameliorate the risk that he will be erroneously deprived of his liberty while his removability is assessed. Respondents appear to argue that it is better for Ordonez-Lopez that he is detained because his underlying asylum application will be heard "more expeditiously on the detained docket than the non-detained docket." Resp. 12. Again, however, this consideration speaks to the merits of his removal, not the deprivation of his liberty.

In terms of available alternatives and their probable benefits, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and

dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Indeed, under "decades of DHS's own practices" prior to 2025, noncitizens "who are present without having been admitted or paroled" just like Ordonez-Lopez, received bond hearings. *Chogllo Chafla v. Scott*, Nos. 25-cv-437, -438, -439, 2025 WL 2688541, at *8 (D. Me. Sept. 22, 2025) (citations omitted). This is precisely the type of proceeding that would give Ordonez-Lopez an opportunity to be heard and to receive a meaningful assessment of whether he is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of his liberty. In fact, an immigration judge already conducted this assessment and decided Ordonez-Lopez should be released, before reversing his own conclusion on jurisdictional grounds after the *Yajure Hurtado* decision.

Therefore, the second *Mathews* factor weighs in favor of Ordonez-Lopez.

**3. Government's Interest**

Respondents only identify their general interest in enforcing immigration laws as their basis for seeking continued detention without a bond hearing. *See* Resp. 3. But again, assuming Respondents' interpretation of the statute is correct, Ordonez-Lopez' constitutional interest in his liberty exists above and apart from the INA. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted).

Certainly, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. But the decisions to release Ordonez-Lopez in 2020, and again in 2025, in and of themselves, "reflect[] a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018).

While there is no evidence in the record indicating that Ordonez-Lopez would be a flight risk or a danger to the community, if any such concerns exist, they would be squarely addressed through a bond hearing. *See Martinez II*, 2025 WL 2598379, at *4. Thus, the third *Matthews* factor also weighs in favor of Ordonez-Lopez.

Because all *Mathews* factors support Ordonez-Lopez's position, the Court finds that his detention without an individualized assessment of flight risk and dangerousness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. Thus, he is entitled to a renewed bond hearing or release from custody. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *13.

**D. Scope of Relief**

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ.[1] *Id.* at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decke*r, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). This is so "[b]ecause the alien's potential loss of liberty is so severe . . . he should not have to share

---

[1] Respondents argue that "the only relief available to Petitioner through habeas is release from custody." Resp. 3. Given that a majority of courts have granted such relief, *see Lopez-Arevelo*, 2025 WL 2691828, at *13 (collecting cases), and that district courts have flexibility in fashioning habeas remedies, *see Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005), the Court finds that it has the authority to order a bond hearing as a habeas remedy. But even assuming Respondents are correct that the sole habeas remedy is release from custody, the Court's order is not simply for an IJ to hold a bond hearing. Rather, the Court orders that if an IJ refuses to timely convene a bond hearing, Ordonez-Lopez must be immediately released. In other words, the Court provides Respondents a final opportunity to give Ordonez-Lopez the process to which he is entitled under the Constitution. If they do so, then there is no longer a violation. If they do not, then the relief ordered is precisely what Respondents contend is available: release.

the risk of error equally." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (citing *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 & n.12 (3d Cir. 2018)). Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner.[2] *See, e.g.*, *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases). The Court follows this consensus and orders the same remedy here.

## III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, **on or before November 17, 2025**, Respondents shall either: (1) provide Ordonez-Lopez with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Ordonez-Lopez's continued detention; or (2) release Ordonez-Lopez from custody, either unconditionally or under the conditions previously set by the immigration judge on September 5, 2025. *See* Sept. 5, 2025, IJ Order 12, ECF No. 1-1.

**IT IS FURTHER ORDERED** that, **on or before November 17, 2025**, Respondents shall **FILE** notice informing the Court whether Ordonez-Lopez has been released from custody. If Ordonez-Lopez has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**There will be no extensions of the November 17, 2025, deadlines.**

[2] The Court takes judicial notice that at least one IJ in the El Paso area has apparently disclaimed jurisdiction to adjudicate bond hearings on the merits even when ordered to do so by a United States District Court. *See* Status Report, *Souza Vieira v. De-Anda Ybarra*, No. 3:25-cv-432-DB (W.D. Tex. Oct. 21, 2025), ECF No. 17. Again, the Court affords agency decisionmakers the opportunity to determine whether Ordonez-Lopez is a danger or flight risk. But if they decline that opportunity, then Ordonez-Lopez must be promptly released.

**SO ORDERED**.

**SIGNED this 7th day of November, 2025.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE